UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ROBERT H. BISHOP,
                          Plaintiff,

v.                                                        5:06-CV-0821
                                                             (GTS/GHL)
NEW PROCESS GEAR, INC.,
                          Defendant.
_____

APPEARANCES:                                          OF COUNSEL:

SCACCIA LAW FIRM                           DANTE M. SCACCIA, ESQ.
  Counsel for Plaintiff                           ROBERT A. TRAYLOR, ESQ.
109 South Warren St.
Suite 402 State Tower Bldg.
Syracuse, NY 13202

HANCOCK & ESTABROOK, LLP           JOHN T. McCANN, ESQ.
  Counsel for Defendant
1500 AXA Tower I
Syracuse, NY 13221

HON. GLENN T. SUDDABY, United States District Judge

## MEMORANDUM DECISION and ORDER

Currently before the Court in this employment discrimination action filed by Robert H. Bishop ("Plaintiff") is a motion for summary judgment filed by New Process Gear, Inc. ("Defendant"). (Dkt. No. 21.) For the reasons set forth below, Defendant's motion is granted, and Plaintiff's Complaint is dismissed.

**I.    RELEVANT BACKGROUND**

    **A.    Plaintiff's Complaint**

Liberally construed, Plaintiff's Complaint generally alleges that Defendant violated Plaintiff's rights under the Family and Medical Leave Act, 29 U.S.C. §§ 2601-2654 ("FMLA"),

and 29 C.F.R. Part 825 ("Regulations"), by terminating his employment on March 1, 2006, for missing work because of a serious medical condition on February 21, 2006, without first granting him 12 weeks of paid medical leave. (Dkt. No. 1, Part 1, at 7-13 [Plf.'s Verified Petition].)

### B.     Undisputed Material Facts

Unless otherwise noted, the following recitation of undisputed material facts derives from a comparison of Defendant's evidence-supported factual assertions in its Statement of Material Facts ("Rule 7.1 Statement") and Plaintiff's response thereto ("Rule 7.1 Response"). (*Compare* Dkt. No. 21, Part 4 [containing Def.'s Rule 7.1 Statement] *with* Dkt. No. 24 [Plf.'s Rule 7.1 Response].)

On February 7, 2005, Plaintiff received a formal written warning from his employer, Defendant. On April 1, 2005, Plaintiff was subjected to a ten-day disciplinary layoff. On October 21, 2005, Plaintiff was issued a "Final Chance Warning." On January 6, 2006, Plaintiff was discharged by Defendant.

On February 10, 2006, Plaintiff and Defendant signed a "Last Chance Settlement Agreement" (the "Agreement"), which reinstated Plaintiff's employment as of February 13, 2006, through a grievance procedure, subject to certain the terms and conditions. Among other things, the Agreement provided,

> You are expected to be <u>at work on time everyday</u>. If you are unavoidably absent or tardy, you must notify the plant at least one hour prior to your scheduled start time by calling your supervisor . . . . Any failure to notify your supervisor prior to an absence or tardiness

will be grounds for discharge. . . .[1]

On February 21, 2006, Plaintiff's scheduled start time was 6:30 a.m.[2] At 5:50 a.m., he knew that he would not be reporting to work that day due to a hemorrhoid condition.[3] However, it was not until 6:35 a.m. that he left a voicemail message with his supervisor indicating that he would not be reporting to work that day due to a hemorrhoid condition.[4]

On March 1, 2006, Plaintiff was discharged by Defendant. The stated reason for the discharge was Plaintiff's "failure to abide by the terms and conditions of [his] last chance letter [of February 10, 2006]."[5]

### C.  Defendant's Motion

---

[1] (*See* Dkt. No. 21, Part 2, at 42 [Ex. 8 to Price Affid., attaching "Last Chance Settlement Agreement" of 2/10/06].)

[2] (*See* Dkt. No. 21, Part 2, ¶ 7, and Ex. 1 Thereto [Price Affid.]; *cf.* Dkt. No. 1, Part 1, at 16, ¶¶ 12-13 [Plf.'s Affid. of 6/19/06, suggesting that he was supported to start work at 6:30 a.m. on February 21, 2006], *accord*, Dkt. No. 21, Part 3, at 6-8 [attaching pages "67," "73" and "74" of Plf.'s Depo. Tr.], Dkt. No. 25, ¶¶ 11-14, 24, 26, 27, 29 [Plf.'s Affid. of 12/10/07].)

[3] (Dkt. No. 21, Part 3, at 7-8 [attaching pages "73" and "74" of Plf.'s Depo. Tr., in which he testified that, by 5:50 a.m. on February 21, 2006, he had decided he was unable to attend work]; Dkt. No. 25, ¶ 14 [Plf.'s Aff. of 12/11/07, stating, "[A]lthough I had been suffering through the entire night with my hemorrhoid problem, I was still willing and getting ready to go to work as of 5:30 a.m. on February 21, 2006, and it was only at about 5:50 a.m. that the pain became excruciating and unbearable. I then knew that I needed to see a doctor instead of going to work . . . ."].)

[4] (*See* Dkt. No. 21, Part 2, ¶ 7 and Ex. 1 Thereto [Price Affid.]; Dkt. No. 25, at 8 [attaching transcription of voicemail message left by Plaintiff with supervisor at 6:35 a.m. on 2/21/06]; *cf.* Dkt. No. 1, Part 1, at 16, ¶¶ 12-13 [Plf.'s Affid. of 6/19/06, indicating that Plf. left a voicemail message with his supervisor at some point after 6:30 a.m.].)

[5] (Dkt. No. 21, Part 2, at 6 [Ex. 1 to Price Affid., attaching letter of March 1, 2006]; *accord,* Dkt. No. 21, Part 2, at 4, ¶ 8 [Price Affid., stating that discharge resulted from her agreement with her immediate supervisor that Plaintiff had violated Last Chance Settlement Agreement of February 10, 2006].)

3

Generally, in support of its motion for summary judgment, Defendant essentially advances the following argument: (1) even assuming that Plaintiff's hemorrhoid condition was FMLA-eligible, under the relevant provisions of the FMLA, Plaintiff had to give Defendant notice of his need for leave as soon as practicable under the facts and circumstances of his particular case; (2) here, Plaintiff did not do so in that he knew at 5:50 a.m. that he would not go into work on February 21, 2006, but did not give Defendant notice of that fact until 6:35 a.m. (five minutes after his shift started); and (3) the unreasonableness of Plaintiff's notice is further demonstrated by the fact that it violated his Last Chance Settlement Agreement with Defendant. (Dkt. No. 21, Part 5, at 8-12 [attaching pages "5" through "9" of Def.'s Memo. of Law].)

In Plaintiff's response to Defendant's motion for summary judgment, he essentially argues that it was impracticable for Plaintiff, before 6:35 a.m., to give notice of his need for leave under the FMLA, because his anal pain was excruciating and unbearable. (Dkt. No. 23, at 8-10 [attaching pages "5" through "7" of Plf.'s Memo. of Law].)

**II.     GOVERNING LEGAL STANDARDS**

    **A.     Legal Standard Governing Motions for Summary Judgment**

For the sake of brevity, and because the parties to this action have demonstrated an accurate understanding of the legal standard governing motions for summary judgment, the Court will not recite that well-known legal standard in this Decision and Order, but will direct the reader to the Court's recent decision in *Pitts v. Onondaga County Sheriff's Dep't*, 04-CV-0828, 2009 WL 3165551, at *2-3 (N.D.N.Y. Sept. 29, 2009) (Suddaby, J.), which accurately recites that legal standard.

    **B.     The FMLA**

In pertinent part, the FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).

### 1.     Two Different Claims Created by FMLA

Under the FMLA, a party may assert either (1) a claim for interference with his rights under the FMLA,[6] or (2) a claim for wrongful termination. *See*, *e.g.*, *Geromanos v. Columbia Univ.*, 322 F. Supp.2d 420, 426-27 (S.D.N.Y. 2004).

To succeed on an interference claim under the FMLA,

> a plaintiff must establish five elements: '(1) that [he] is an eligible employee under the FMLA; (2) that defendant is an employer as defined in the FMLA; (3) that [he] was entitled to leave under the FMLA; (4) that [he] gave notice to the defendant of [his] intention to take leave and (5) that [he] was denied benefits to which [he] was entitled under FMLA.'

*Robertson v. Amtrak/Nat'l R.R. Passenger Corp.*, 400 F. Supp.2d 612, 626 (S.D.N.Y. 2005) (quoting *Geromanos*, 322 F. Supp.2d at 427 [citation omitted]).

To succeed on a wrongful-termination claim under the FMLA (also known as a

---

[6] "The FMLA grants employees two distinct rights." *Robertson v. Amtrak/Nat'l R.R. Passenger Corp.*, 400 F. Supp.2d 612, 626 (S.D.N.Y. 2005). "First, it generally requires covered employers to grant employees who have worked for twelve months (or 1250 hours in twelve months) up to twelve weeks' leave during any twelve month period for, *inter alia*, a serious health condition that makes the employee unable to perform the functions of the position of such employee." *Robertson*, 400 F. Supp.2d at 626 (internal quotation marks and citations omitted). "Second, it protects an employee from discharge or demotion by an employer if that action is motivated by the employee's taking of leave pursuant to the FMLA." *Id.* (internal quotation marks and citations omitted).

"retaliation claim"),[7] "the plaintiff must show: (1) []he exercised rights protected under the FMLA; (2) []he was otherwise qualified for h[is] position; (3) []he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Brown v. The Pension Bds.*, 488 F. Supp.2d 395, 410 (S.D.N.Y. 2007) (citing *Potenza*, 365 F.3d at 167). "As with ADA discrimination claims, if the plaintiff succeeds in proving a *prima facie* case, the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for the adverse action." *Brown*, 488 F. Supp.2d at 410 (citation omitted). "If defendant is successful, the plaintiff bears the burden of showing that defendant's proffered rationale is pretextual." *Id*.

### 2.   Notice Requirement Conferred on Employee

"When the approximate timing of the need for leave is not foreseeable, an employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a).[8] "It generally should be practicable for the employee to provide notice of leave that is unforeseeable within the time prescribed by the employer's usual and customary notice requirements applicable to such leave [in accordance with 29 C.F.R.

---

[7] "A wrongful discharge claim brought under § 2615(a)(1) is properly analyzed not as a claim for interference, but as a claim for retaliation, subject to the *McDonnell Douglas* burden shifting standard." *Geromanos*, 322 F. Supp.2d at 433 (citing *Potenza v. City of New York*, 365 F.3d 165, 167 [2d Cir. 2004]).

[8] If the need for leave is foreseeable based on planned medical treatment, the employee "shall provide the employer with not less than 30 days' notice, before the date the leave is to begin, of the employee's intention to take leave under such subparagraph, except that if the date of the treatment requires leave to begin in less than 30 days, the employee shall provide such notice as is practicable." 29 U.S.C. § 2612(e)(2)(B).

§ 825.303(c)]." *Id.*[9] Section 823.303(c) provides as follows:

> When the need for leave is not foreseeable, an employee must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances. For example, an employer may require employees to call a designated number or a specific individual to request leave. However, if an employee requires emergency medical treatment, he or she would not be required to follow the call-in procedure until his or her condition is stabilized and he or she has access to, and is able to use, a phone. Similarly, in the case of an emergency requiring leave because of a FMLA-qualifying reason, written advance notice pursuant to an employer's internal rules and procedures may not be required when FMLA leave is involved. If an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or denied.

29 C.F.R. § 825.303(c). Similarly, § 825.304 provides in pertinent part,

> If an employer does not waive the employee's obligations under its internal leave rules, the employer may take appropriate action under its internal rules and procedures for failure to follow its usual and customary notification rules, absent unusual circumstances, as long as the actions are taken in a manner that does not discriminate against employees taking FMLA leave and the rules are not inconsistent with § 825.303(a).

29 C.F.R. § 825.304(e).[10]

---

[9] In part because of a desire to clarify the notice requirements, the U.S. Department of Labor recently issued new FMLA regulations, which became effective in January 2009. *See Mason v. Steelcraft, Inc.*, 07-CV-0584, 2009 WL 650387, at *7 (S.D. Ohio Mar. 10, 2009). More specifically, "[s]ection 825.303(a) was modified to eliminate the expectation that an employee will give notice to the employer within no more than one or two working days of learning of the need for leave [and to instead] provide that '[i]t generally should be practicable for the employee to provide notice of leave that is unforeseeable within the time prescribed by the employer's usual and customary notice requirements applicable to such leave.'" *Mason*, 2009 WL 650387, at *7 (quoting 29 C.F.R. § 825.303[a]). In addition, "subsection (c) was added entitled 'Complying with employer policy.'" *Id*.

[10] Section 825.304(e) was also recently added by the U.S. Department of Labor, because of a desire to clarify the notice requirements. *Mason*, 2009 WL 650387, at *8.

**III.   ANALYSIS**

    **A.   Interference Claim**

For the sake of argument (and brevity), the Court will assume that Plaintiff has adduced admissible record evidence establishing the first three elements necessary to succeed on an interference claim under the FMLA (described above in Part II.B.1. of this Decision and Order): that he was an eligible employee under the FMLA due to his hemorrhoid condition;[11] that Defendant was an employer as defined in the FMLA; and that Plaintiff was entitled to leave under the FMLA.  Remaining in dispute, then, is whether Plaintiff has adduced admissible record evidence establishing the fourth and fifth elements necessary to succeed on an interference claim under the FMLA: the requirement that Plaintiff gave adequate notice to Defendant of his intention to take leave; and the requirement that Plaintiff was denied benefits to which he was entitled under the FMLA.

With regard to the fourth element, as stated in Part II.B.2. of this Decision and Order, when the approximate timing of the need for FMLA leave is not foreseeable, an employee must provide notice to the employer "as soon as practicable under the facts and circumstances" of the particular case.

---

[11]   "A 'serious health condition,' as defined by applicable regulations, can exist when an employee requires inpatient medical care or continuing treatment by a health care provider-which itself may take a variety of forms." *Slaughter v. American Bldg. Maintenance Co. of New York*, 64 F. Supp.2d 319, 325 n.5 (S.D.N.Y. 1999) (citing 29 C.F.R. §§ 825.114, .800).  However "[t]he final regulations interpreting the FMLA also indicate that chronic, serious health conditions may involve 'recurring episodes of a single underlying condition' or 'cause episodic rather than a continuing period of incapacity.'" *Slaughter*, 64 F. Supp.2d at 325 n.5 (citing 29 C.F.R. § 825.114[a][2][iii][B]-[C]).  In addition, "[a]bsences attributable to incapacity under Section 825.114(a)(2)(iii) may 'qualify for FMLA leave even though the employee . . . does not receive treatment from a health care provider during the absence, and even if the absence does not last more than three days.'" *Id*. (citing 29 C.F.R. § 825.114[e]).

Here, liberally construed, Plaintiff's Complaint alleges that Defendant interfered with his rights under the FMLA because, although he provided Defendant with notice "as soon as practicable," Defendant denied him benefits to which he was entitled under the FMLA. (Dkt. No. 1, Part 1, at 8-19, ¶¶ 7-9, 12, 14, 15, 17, 20, 21, 24, 25 [Plf.'s Verified Petition].)[12] Furthermore, as explained above in Part I.C. of this Decision and Order, Plaintiff argues that it was impracticable for him, before 6:35 a.m., to give notice of his need for leave under the FMLA, because his anal pain was excruciating and unbearable. (Dkt. No. 23, at 8-10 [attaching pages "5" through "7" of Plf.'s Memo. of Law].)

### 1. Inadmissibility of Plaintiff's Late-Blossoming Affidavit Testimony that He Provided Notice As Soon As Practicable

In support of this argument that he provided Defendant with notice as soon as practicable, Plaintiff cites his affidavit of December 11, 2007. (Dkt. No. 23, at 8-10 [attaching pages "5" through "7" of Plf.'s Memo. of Law])  In that affidavit, Plaintiff asserts, in pertinent part, as follows: (1) he did not leave a voicemail message with his supervisor before 6:35 a.m. because he was in so much pain;[13] and (2) he did not know, before 6:35 a.m., that he was going to be absent or tardy that day.[14]

---

[12]   A claim that notice was provided "as soon as practicable under the facts and circumstances," but that the employee was nonetheless denied FMLA leave, is properly characterized as an interference claim under the FMLA. *See, e.g., Golden v. New York City Dept. of Evntl. Protection*, 06-CV-1587, 2008 WL 762107, at *1 (S.D.N.Y. Mar. 24, 2008).

[13]   (Dkt. No. 25, ¶ 28 [Plf.'s Aff. of 12/11/07, asserting, "[W]ith the pain I was then experiencing, my mind was more on pain relief and pain tolerance than on [calling in] any earlier than I did"].)

[14]   (*Id*. at ¶ 24, asserting, "[W]hile I acknowledged [in my phone messages to Defendant] that I could have called in [and left a message] at 5:30 a.m. . . ., I did not then know that I was going to be absent or tardy that day"].)

Both factual assertions contradict Plaintiff's deposition testimony of May 30, 2006, in which he testified that he did not leave that voicemail message until after 6:30 a.m. because he thought his supervisor might be getting out of the shower, and/or he preferred to notify his supervisor through a personal conversation. (*See*, *infra*, Part III.A.1. of this Decision and Order.) Moreover, both factual assertions contradict two subsequent voicemail messages Plaintiff left with his supervisor, in which he stated that he could have called his supervisor between 5:50 a.m. and 6:35 a.m., and that he did not do so because he wanted to talk to his supervisor personally.[15]  Finally, the second factual assertion contradicts another paragraph of Plaintiff's affidavit of December 11, 2007, in which he swore that, "although I had been suffering through the entire night with my hemorrhoid problem, I was still willing and getting ready to go to work as of 5:30 a.m. on February 21, 2006, and it was only at about 5:50 a.m. that the pain became excruciating and unbearable.  I then knew that I needed to see a doctor instead of going to work . . . ." (Dkt. No. 25, ¶ 14 [Plf.'s Aff. of 12/11/07].)

"It is well established that issues of credibility are almost never to be resolved by a court on a motion for summary judgment." *Felix-Torres v. Graham*, 06-CV-1090, 2009 WL 3526644, at *4 & n.4 (N.D.N.Y. Oct. 23, 2009) (Suddaby, J.) (collecting cases). "However, there is a

---

[15] (*See* Dkt. No. 25, at 8 [attaching transcription of voicemail message left by Plaintiff with supervisor at 8:00 a.m. on 2/21/06, stating, "I could have called you at 1:00 in the morning.  I could have called you at 2:00 or 3:00 or 4:00, 5:00 – I was up all night, I couldn't sleep. . . .  [I]t would have been no problem calling you . . . .  It would have been no problem calling you at 5:30 and leaving a message on your machine. . . .  I know I should have done it."]; Dkt. No. 25, at 9 [attaching transcription of voicemail message left by Plaintiff with supervisor, stating, "[A]gain, you know, I deeply apologize.  I wanted to talk to you in person.  I didn't want to leave you a voice mail. . . .  You know, I should have just come to work and then gone home at 8:00 or 9:00 or something . . . .  I'm really sorry Bob, I could have easily called you.  Like I said, I was up all night."]).

narrow exception to this well-established rule." *Felix-Torres,* 2009 WL 3526644, at *4 (citation omitted); *Blake v. Race,* 487 F. Supp.2d 187, 202 (E.D.N.Y. March 29, 2007).  In *Jeffreys v. City of New York,* 426 F.3d 549 (2d Cir. 2005), the Second Circuit explained that this narrow exception is for testimony by a non-movant that possesses the following two characteristics: (1) it constitutes almost the exclusive basis for a disputed issue of fact in the case (or, expressed differently, it is largely unsubstantiated by any other direct evidence); and (2) it is so lacking in credibility (because the testimony is incomplete and/or replete with inconsistencies and improbabilities) that, even after drawing all inferences in the light most favorable to the non-movant, no reasonable jury could find for the non-movant.[16]

Similarly, "[i]t is well-settled that a party may not defeat . . . a motion [for summary

---

[16]    *See Jeffreys v. City of New York*, 426 F.3d 549, 554-55 (2d Cir. 2005) ("[I]n the rare circumstances where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether . . . there are any 'genuine' issues of material fact, without making some assessment of the plaintiff's account. . . .  In the circumstances presented in the instant case-where (1) the District Court found nothing in the record to support plaintiff's allegations other than plaintiff's own contradictory and incomplete testimony, and (2) the District Court, even after drawing all inferences in the light most favorable to the plaintiff, determined that no reasonable person could believe Jeffreys' testimony, . . . we hold that the District Court did not err by awarding summary judgment.  Because no reasonable person would undertake the suspension of disbelief necessary to give credit to the allegations made in the complaint, . . . conclude that summary judgment was appropriate.") [internal quotation marks and citations omitted]; *cf. Argus, Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 42-46 (2d Cir. 1986) (affirming grant of summary judgment to defendants in part because plaintiffs' deposition testimony regarding an alleged defect in a camera product line [1] was "unsupported by documentary or other concrete evidence," and indeed was contradicted by the other record evidence, and [2] was "conclusory" and "inconsistent" with plaintiffs' present representations); *Olle v. Columbia Univ.*, 332 F. Supp.2d 599, 612-15 (S.D.N.Y. 2004) (plaintiff's deposition testimony was insufficient evidence to oppose defendants' motion for summary judgment where that testimony [1] recounted specific allegedly sexist remarks that "were either unsupported by admissible evidence or benign," and [2] were inconsistent with plaintiff's other statements and claims), *aff'd*, 136 F. App'x 383 (2d Cir. 2005) (unreported decision, cited not as precedential authority but merely to show the case's subsequent history, in accordance with Second Circuit Local Rule § 0.23).

judgment] by submitting an affidavit that disputes [or contradicts] his prior sworn testimony." *Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 572 (2d Cir. 1991) (citation omitted); *Langman Fabrics v. Graf Californiawear, Inc.*, 160 F.3d 106, 112 (2d Cir. 1998) (citation omitted); *see also Hayes v. New York City Dept. of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) ("[A]n affidavit . . . that, by omission or addition, contradicts the affiant's previous deposition testimony' is insufficient to create a genuine issue of fact."); *Mack v. United States*, 814 F.2d 120, 124 (2d Cir. 1987) (noting that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment). "The reason for this rule is that permitting a non-movant to oppose a motion for summary judgment in this way would 'diminish[ ] the utility of summary judgment as a procedure for screening out sham issues of fact.'" *Duttweiler v. Eagle Janitorial, Inc.*, 05-CV-0886, 2009 WL 1606351, at *4 (N.D.N.Y. June 4, 2009) (Suddaby, J.) (citing *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 [2d Cir. 1969]).[17]  "If [a] [p]laintiff wish[es] to contradict h[is] own deposition testimony, the permissible procedural method [is] . . . to either (1) clarify h[is] testimony on cross-examination . . . pursuant to Fed. R. Civ. P. 30(c)(1), or (2) within 30 days after the deposition transcript becomes available, sign a statement listing the changes to that transcript, and the reasons for making those changes, pursuant to Fed. R. Civ. P. 30(e)(1)(B)." *Felix-Torres,* 2009 WL 3526644, at *4; *Duttweiler*, 2009 WL 1606351, at *4.

Under the circumstances, the Court must reject those portions of Plaintiff's late-

---

[17]     *See also Jeffreys v. Rossi*, 275 F. Supp.2d 463, 477 (S.D.N.Y. 2003) ("The rationale underlying the rule that contradictory evidence may be disregarded is that a party cannot rely upon implausible testimony to create a triable issue of fact.") (citing *Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 572 [2d Cir. 1991]), *aff'd*, 426 F.3d 549 (2d Cir. 2005).

blossoming affidavit that contradict his prior deposition testimony, the voicemail messages he left his supervisor, and the other portions of his late-blossoming affidavit.

### 2. Uncontroverted Nature of Record Evidence Establishing that Plaintiff Did Not Provide Notice As Soon As Practicable

In his deposition conducted on May 30, 2006, Plaintiff testified that, by 5:50 a.m. on February 21, 2006, he had decided he was unable to attend work. (Dkt. No. 21, Part 3, at 7-8 [attaching pages "73" and "74" of Plf.'s Depo. Tr.].) Moreover, Plaintiff testified that, he waited until 6:35 a.m. to leave his supervisor, Bob Natale, a voicemail message explaining his absence.[18] (*Id.*) Plaintiff acknowledged in his deposition that he could have called his supervisor before he did, and that there was nothing preventing him from calling his supervisor to notify him that he would not be coming to work that day between 5:50 a.m. and 6:35 a.m. (*Id.* at 6-8 [attaching pages "67," "73" and "74" of Plf.'s Depo. Tr.].) Nor was there anything preventing him from leaving a voicemail message with his supervisor when he called him at 6:30 a.m. (*Id.*) However, he did not leave that voicemail message until when he called his supervisor back, after 6:30 a.m. (*Id.* at 8 [attaching page "74" of Plf.'s Depo. Tr.].) According to Plaintiff, he did not leave a voicemail message until after 6:30 a.m. because (1) he thought his supervisor might be getting out of the shower, and/or (2) he preferred to notify his supervisor through a personal conversation. (*Id.* at 7-8 [attaching pages "73" and "74" of Plf.'s Depo. Tr.].)

Similarly, in the three voicemail messages he left with his supervisor, Plaintiff stated that he could have called his supervisor between 5:50 a.m. and 6:35 a.m., and that he did not do so because he wanted to talk to his supervisor personally.[19]

---

[18]   Plaintiff testified that around 6:30 a.m. he placed several phone calls to the plant and to Mr. Natale's cell phone, but chose not to leave a voicemail message until 6:35 a.m. (Dkt. No. 21, Part 3, at 7-8 [attaching pages "72" and "74" of Plf.'s Depo. Tr.].)

[19]   (*See* Dkt. No. 25, at 8 [attaching transcription of voicemail messages left by Plaintiff with supervisor at 6:35 a.m. and 8:00 a.m. on 2/21/06]; Dkt. No. 25, at 9 [attaching

Finally, in one portion of Plaintiff's affidavit of December 11, 2007, he swore that, "although I had been suffering through the entire night with my hemorrhoid problem, I was still willing and getting ready to go to work as of 5:30 a.m. on February 21, 2006, and it was only at about 5:50 a.m. that the pain became excruciating and unbearable. I then knew that I needed to see a doctor instead of going to work . . . ." (Dkt. No. 25, ¶ 14 [Plf.'s Aff. of 12/11/07].)

Based on the current record, the Court finds that no rational factfinder could conclude that Plaintiff lacked knowledge, at 5:50 a.m., that he would not be reporting to work that day. In addition, the Court finds that no rational factfinder could conclude that Plaintiff was unable, as a result of his condition, to contact his supervisor between 5:50 a.m. and 6:30 a.m. As a result, the Court finds that no rational factfinder could conclude that Plaintiff gave notice to his employer of his need for FMLA leave as soon as it was practicable.

For these reasons, the Court finds that Plaintiff has failed to create a genuine issue of material fact with regard to his interference claim. Thus, that claim is dismissed.

### 3. Effect of "Last Chance Settlement Agreement" Under Circumstances

At first blush, a delay of forty-five minutes in notifying one's employer of one's inability to work that day might seem *de minimis*. However, pursuant to the FLMA, this delay must be viewed in light of the employer's notice requirements regarding tardiness or absence. *See*, *supra*, Part II.B.2. of this Decision and Order.

Here, the operative notice requirement–Plaintiff's "Last Chance Settlement Agreement" with Defendant–required Plaintiff "to notify the plant at least one hour prior to [his] scheduled start time" in the event that Plaintiff is "unavoidably absent or tardy." (Dkt. No. 21, Part 2, at

---

transcription of subsequent voicemail message left by Plaintiff with supervisor].)

42.) The Agreement further stated that "[a]ny failure to notify your supervisor prior to an absence or tardiness will be grounds for discharge." (*Id.*)

Granted, because the Agreement failed to recognize that, in FMLA leave situations, it may not be possible for Plaintiff to call in one hour before his shift, the portion of the Agreement requiring Plaintiff to *always* give at least *one hour's* notice of tardiness or absence is invalidated by the FMLA under the circumstances.[20] However, the FMLA does not invalidate that portion of the Agreement that required Plaintiff to give *prior* notice of tardiness or absence if practicable. (*See* Dkt. No. 21, Part 2, at 42 [Ex. 8 to Price Affid., attaching "Last Chance Settlement Agreement" of 2/10/06, providing, "You are expected to be <u>at work on time everyday</u>. . . . . Any failure to notify your supervisor prior to an absence or tardiness will be grounds for discharge . . . .").

Indeed, the FMLA expressly recognizes the validity of such provisions. *See* 29 C.F.R. § 825.303(c) ("When the need for leave is not foreseeable, an employee must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances. . . . If an employee does not comply with the employer's usual notice and

---

[20] *See Slaughter v. Am. Bldg. Maint. Co. of New York*, 64 F. Supp.2d 319, 327 (S.D.N.Y. 1999) ("An employer cannot use its own notice policy to circumscribe an employee's rights under the FMLA, though the employer is certainly able to establish policies for the provision of notice in the normal course of affairs."); *Mora v. Chem-Tronics, Inc.*, 16 F. Supp.2d 1192, 1216-17 (S.D. Cal. 1998) ("A company policy that does not allow for such flexibility nor recognize that in FMLA leave situations it may not be possible for an employee to call in one half and [sic] hour before a shift begins violates the employee's rights under the Act. Undoubtedly, an employer can establish its own policies for usual and customary notice for requesting general leave. But, such polices must defer to the FMLA when FMLA leave is appropriate."); *Spraggins v. Knauf Fiber Glass GmbH, Inc.*, 401 F. Supp.2d 1235, 1239 (M.D. Ala. 2005) ("The FMLA . . . allows an employer to require notice one hour before the employee's shift begins, as long as it is reasonable to expect the employee, under the individual circumstances, to give such notice.").

procedural requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or denied."); 29 C.F.R. § 825.303(c) ("[T]he employer may take appropriate action under its internal rules and procedures for failure to follow its usual and customary notification rules, absent unusual circumstances . . . .").

Based on the uncontroverted record evidence that Plaintiff's delayed (without medical justification) forty-five minutes in notifying Defendant of his inability to work before his shift started on February 21, 2006, and the uncontroverted record evidence that this failure violated a valid provision of Plaintiff's Agreement with Defendant, the Court finds that no rational factfinder could conclude that Plaintiff has adduced any admissible record evidence in support of establishing the fourth element of the interference claim (i.e., the requirement that Plaintiff gave adequate notice to Defendant).

For these reasons, Plaintiff's interference claim is dismissed.

### B.     Wrongful-Termination Claim

Even assuming that Plaintiff has stated a *prima facie* claim for retaliation, Defendant has offered a legitimate, non-discriminatory reason for terminating him–i.e., he violated the "Last Chance Settlement Agreement" by failing to give his supervisor notice of his absence in advance of that absence.[21] *See Jackson v. Nor Loch Manor Healthcare Facility*, 297 F. Supp.2d 633, 636 (W.D.N.Y. 2004) ("Certainly, an employer is entitled to discharge an employee who fails to

---

[21]     (*See*, *e.g.*, Dkt. No. 21, Part 2, at 4, ¶ 8 [Price Affid., stating that discharge resulted from Price's agreement with her immediate supervisor that Plaintiff had violated Last Chance Settlement Agreement of February 10, 2006, by failing to give his supervisor notice of his absence in advance of that absence]; Dkt. No. 21, Part 2, at 6 [Ex. 1 to Price Affid., attaching Letter from Price to Plaintiff dated March 1, 2006, stating that the reason Plaintiff was discharged was his "failure to abide by the terms and conditions of [his] last chance letter [of February 10, 2006]"].)

follow company rules and fails to appear for work without notification, even if the absences are attributable to a medical problem."), *aff'd* 134 F. App'x 477 (2d Cir. 2005); *Brown*, 488 F. Supp.2d at 410 ("Termination for violation of a company call-in policy is a legitimate, non-discriminatory and non-retaliatory reason for discharge.").

Moreover, Plaintiff has failed to offer any admissible record evidence from which a rational factfinder could conclude that Defendant's proffered rationale was pretextual. Simply stated, Plaintiff has failed to meet his burden of showing that the adverse employment action he experienced occurred because he exercised rights protected under the FMLA; rather, the record is clear that the adverse employment action he experienced occurred because he violated a valid provision of his Agreement with Defendant.

For these reasons, Plaintiff's wrongful-termination claim is dismissed.

**ACCORDINGLY,** it is

**ORDERED** that Defendant's motion for summary judgment (Dkt. No. 21) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1, Part 1, at 7-13) is **<u>DISMISSED</u>** in its entirety. The clerk is directed to enter judgment in favor of the defendant.

Dated: November 18, 2009
Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge